UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOLORES ANN SILVA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 2:13-CV-3100-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 17, 18. Attorney D. James Tree represents Plaintiff, and Special Assistant United States Attorney Kathryn Miller represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 24. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### JURISDICTION

On March 23, 2010, Plaintiff filed an application for supplemental security income benefits, alleging disability beginning September 23, 2004. Tr. 22; 196. Plaintiff reported that she was unable to work due to PTSD, depressive disorder, learning disability, IQ of 67, major depression, anxiety and asthma. Tr. 168.

Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ).  Tr. 101-21.

On April 25, 2012, ALJ Donna W. Shipps convened a hearing.  Tr. 48-100.  At that hearing, medical expert Marian Martin, Ph.D., vocational expert Daniel McKinney, and Plaintiff, who was represented by counsel, testified.  Tr. 48-100.  On May 22, 2012, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 22-34.  The Appeals Council declined review.  Tr. 1-4.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here.  At the time of the hearing, Plaintiff was 38 years old and was living with her twenty-three year old daughter, three nieces and nephews and one granddaughter.  Tr. 67-68.  Plaintiff finished the sixth grade, and quit school the following year because she was pregnant.  Tr. 67; 480.

Plaintiff testified that she was abused as a child, and she suffers occasional flashbacks.  Tr. 71-72.  She said she has learned to cope with anxiety by utilizing breathing exercises that can last between ten and thirty minutes.  Tr. 72-73.

Plaintiff testified that her adult daughter moved home to help her, and as a result, Plaintiff cooks for the household and her daughter handles cleaning and laundry.  Tr. 69.  She watches television and attends church.  Tr. 481.  Plaintiff said she sometimes attends school functions for the children, but she tries to minimize the time she is there, or she stands by the exit.  Tr. 73.  She said she keeps her curtains drawn during the day, and her doors locked.  Tr. 74.   She drives, and she often has one of the kids go to the store with her, because she tends to "forget the stuff."  Tr. 76.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 23, 2010, her application date.  Tr. 24.  At step two, the ALJ found Plaintiff suffered from the severe impairments of bilateral ankle pain, allergic rhinitis, low back pain secondary to lumbalgia and lumbar spondylosis and depression.  Tr. 24.  At step three, the ALJ found Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).   Tr. 26.  The ALJ found Plaintiff has the residual functional capacity to perform a full range of medium work.  Tr. 27-28.  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a housekeeper, sorter, agricultural produce packer, and harvest worker.  Tr. 32.  Alternatively, the ALJ found that considering Plaintiff's age, education, work experience and residual functional capacity, other jobs exist in significant numbers that Plaintiff can perform, such as small products assembler, packing and filling machine operator, and production inspector and checker.  Tr. 33-34.  As a result, the ALJ found that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date of the application was filed through the date of the decision.  Tr. 34.

## ISSUES

Plaintiff contends that the ALJ erred by (1) finding Plaintiff had little

credibility; (2) improperly evaluating the medical evidence; and (3) relying upon the VE testimony.  ECF No. 17 at 11.

**1.     Credibility**

Plaintiff challenges two of the reasons the ALJ relied upon in determining Plaintiff had little credibility.  ECF No. 17 at 12.  First, Plaintiff argues that the ALJ misread several medical records and erroneously concluded that Plaintiff had not experienced any impairing depressive symptoms or anxiety/panic attacks in three visits.[1]  Second, Plaintiff contends that the ALJ erred by relying upon Plaintiff's activity level.  ECF No. 17 at 18-20.

As stated by the Ninth Circuit:

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the first step, the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, that could reasonably be expected to produce pain or other symptoms."  *Smolen,* 80 F.3d at 1281-82; *see Cotton v. Bowen,* 799 F.2d 1403, 1405 (9th Cir. 1986).  If this test is satisfied, and if no evidence exists of

---

[1]Plaintiff raises this point in the section of her brief arguing that the ALJ improperly weighed the medical evidence.  ECF No. 17 at 12-14.  However, the ALJ cited this evidence only to support her determination of Plaintiff's credibility.  Tr. 29.  Therefore, this Order discusses the point in connection with credibility.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1284. "[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner,* 452 F.2d 855 n.7 (9th Cir. 1971).  However, if malingering is established, the adjudicator is not bound by the "clear and convincing standard." *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In determining a claimant's credibility, an ALJ may consider, among other factors, inconsistencies between the claimant's testimony and the claimant's daily activities, conduct and/or work record. *Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

In this case, the ALJ devoted nearly two pages of reasons supporting the negative credibility determination. The ALJ cited several reasons for finding Plaintiff lacked credibility, including a lack of supporting objective medical evidence, evidence of an improvement in symptoms with medication, lack of treatment for physical ailments, inconsistent activity level, Plaintiff's stopping work for reasons other than disability, and evidence of malingering. Tr. 29-30.

      **a.    Lack of Objective Medical Evidence**

Plaintiff challenges the ALJ's finding that the objective medical records do not support the level of dysfunction she claims. ECF No. 17 at 21. Specifically, Plaintiff alleges that the ALJ misinterpreted the evidence and erroneously concluded: "In November 2010, the observation was made that the claimant had not experienced any functionally impairing depressive symptoms or anxiety/panic attack symptoms or PTSD symptoms in three visits." Tr. 29; ECF No. 17 at 12-13.

Defendant concedes that the ALJ misinterpreted the record, but the

Defendant argues that the error was harmless because sufficient evidence supported the ALJ's remaining reasons for discounting credibility based upon a lack of objective medical evidence. ECF No. 18 at 9-10.

In concluding that the objective medical evidence did not support Plaintiff's claims related to the severity of her symptoms, the ALJ cited several reasons in addition to the reason based upon the misreading of certain specific entries in the record. For example, as the ALJ found, multiple medical records revealed Plaintiff's consistently demonstrated unremarkable mental status findings on exam, such as bright affect, goal-directed thoughts, intact judgment and insight. See Tr. 280-83; 288-91; 292-999; 307-08; 468; 471; 525; 755. Similarly, as the ALJ found, several exam notes that revealed Plaintiff's physical impairments were slight or minimal, and often relieved by conservative treatment. Tr. 29-30; 280; 284; 333; 402; 594.

Where the court concludes that one or more of the ALJ's reasons supporting an adverse credibility finding are invalid, the court examines whether the ALJ's reliance on such reasons was harmless error. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Batson*, 359 F.3d at 1195-97 (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). The Ninth Circuit explained, "So long as there remains 'substantial evidence supporting the ALJ's conclusions on credibility' and the error 'does not negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1197).

In this case, while the ALJ erred by misinterpreting a portion of the medical evidence -- related to whether or not Plaintiff had met her treatment goals -- the remaining medical evidence supports the ALJ's finding of negative credibility. Because all but one of the ALJ's cited examples to the medical record support the negative credibility finding, the ALJ's use of the single erroneous reason is

harmless error.

b. **Activities of Daily Living**

Plaintiff also argues that the ALJ erred by relying upon Plaintiff's daily activities as a reason to discount her credibility. ECF No. 17 at 18-20. The ALJ found that Plaintiff's activity level was inconsistent with severity of her the limitations she alleged. Tr. 30. Specifically, the ALJ noted that Plaintiff is able to care for multiple children all under the age of 13, was able to travel internationally, and she reported that she exercises regularly. Tr. 30.

In evaluating the claimant's testimony, an ALJ properly uses "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, inadequately explained failure to seek treatment, and whether the claimant's daily activities are inconsistent with the alleged symptoms. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1036 (9th Cir. 2008); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007). While a claimant need not "'vegetate in a dark room'" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant participates in everyday activities indicating capacities that are transferable to a work setting. *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012), quoting *Smith v. Califano,* 637 F.2d 968, 971 (3rd Cir. 1981)). Cooking, house cleaning, doing laundry, and managing finances "tend to suggest" that Plaintiff may be "capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas,* 278 F.3d at 959.

Plaintiff alleged that she was unable to work because she had anxiety attacks that required her to stop what she was doing and concentrate on breathing exercises. Tr. 70-71. She said she would have to engage in the exercises for

between ten and 30 minutes, and she resorts to this throughout the day.  Tr. 70.  Plaintiff described being afraid of men walking behind her, afraid in crowds, always aware of the location of exit doors when she is not at home, and she said she keeps her house locked with the curtains drawn and is often fearful someone is outside.  Tr. 74.  Plaintiff said she withdraws into her room every day, and if she doesn't have to go anywhere, will stay there most of the day.  Tr. 77.

The record supports the ALJ's conclusions that Plaintiff engaged in daily activities that was inconsistent with her claims of disability.  For example, Plaintiff testified that she was able to travel to Mexico in 2011, and stay for two weeks.  Tr. 79.  She also admitted that she runs the household and cares for four nieces and nephews, in addition to her daughter and granddaughter.  Tr. 68.  She testified that at one point, when she needed money because she had lost her wallet, she went to work temporarily so she could earn enough to pay her rent.  Tr. 82-83.  She said the reason she stopped working was because the work was temporary, seasonal work.  Tr. 84.  She also said she has not tried to re-enter the workforce because she was caring for the kids.  Tr. 84-85.[2]  Plaintiff said she thought could not work because she did not have the necessary education, and because she is unable to lift things.  Tr. 85.

In sum, Plaintiff's acknowledged daily activities of caring for multiple children, running a household, extended vacationing in Mexico, obtaining work when she felt it was necessary, and indicating that she is unable to work because she lacks education, all reveal that Plaintiff's daily activities are inconsistent with her allegations that she is disabled and incapable of sustaining gainful employment.  The ALJ did not err in considering these factors in determining that Plaintiff had little credibility.

---

[2] At the time of the hearing, the children were ages 16, 12, 11, 10 and 8 years old.  Tr. 85.

## 2. Medical Opinion Evidence

Plaintiff contends that the ALJ erred in weighing the medical opinions. ECF No. 17 at 14-17. Specifically, Plaintiff complains that the ALJ erred by dismissing the opinion of Carrie Bishop, M.Ed., on the basis that she was not a doctor, and by giving greater weight to the opinions of examiner Jay M. Toews, Ed.D. ECF No. 17 at 14-15.

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claim ant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* However, "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989).

An ALJ may reject the opinion of an examining physician, if contradicted by a non-examining physician, with "specific and legitimate reasons that are supported by substantial evidence in the record." *Moore v. Comm'r of the Soc. Sec. Admin,* 278 F.3d 920, 924 (9th Cir. 2002), citing *Lester,* 81 F.3d at 830-31. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), citing *Magallanes*, 881 F.2d at 752.

On February 2, 2010, Carrie Bishop, M.Ed., administered the WAIS-IV and completed a Psychological Evaluation Report. Tr. 269-77. According to Ms. Bishop, Plaintiff's WAIS-IV test results indicated cognitive ability and verbal

reasoning ability are both within the "extremely low range" of functioning. Tr. 270. Ms. Bishop also reported that Plaintiff's scores revealed that her abilities to sustain attention, concentration and exert mental control are in the extremely low range, and her ability to process material was in the borderline range. Tr. 271.

Ms. Bishop provided several suggestions related to the work conditions under which Plaintiff would best function. Tr. 271-72. For example, Ms. Bishop recommended a positive environment, mental rehearsal prior to undertaking a task, institution of structured processes, well-defined, realistic and attainable goals in a stable environment. Tr. 271-72. Ms. Bishop did not provide an explicit opinion about whether Plaintiff could sustain full time employment.

On November 23, 2010, Jay M. Toews, Ed.D., administered the WSM-III, WAIS-IV, Trail-Making A and B and the Structured Interview of Malingered Symptomatology. Tr. 479. According to Dr. Toews, Plaintiff's test results reveal verbal and non-verbal reasoning and problem solving abilities are equally well developed and fall in the low average range. Tr. 482. Processing speed score was at the high end of the borderline range, "suggesting a mild to moderate deficit in the ability to process routine visual information efficiently." Tr. 482. On the WSM-III, Plaintiff's visual and auditory memory scores were in the low average to average range, and she revealed fair to good auditory attention/concentration and/or the ability to acquire new verbal information. Tr. 482. Dr. Toews opined that "overall, WSM-III scores indicate memory is adequate for functioning in a wide variety of jobs." Tr. 483.

Dr. Toews related that Plaintiff's score on the SIMS test revealed that Plaintiff is "grossly exaggerating psychological problems in order to enhance chances of securing disability benefits. Malingering cannot be ruled out." Tr. 483. Dr. Toews concluded that Plaintiff functions in the borderline range of intelligence, her memory functioning is quite good and the SIMS score is highly suggestive of symptom exaggeration and probable malingering. Tr. 484. Dr. Toews opined that

Plaintiff could perform repetitive work:

> She has relatively good visual-perceptual and visual motor abilities, and has excellent verbal recall ability. She interacts well. Functionally, she is able to comprehend and remember 2-3 step instructions, interact with coworkers and supervisors, and would be able to perform at least repetitive types of work. She could be trained in a variety of clerical and routine office types of jobs. She is able to work at a normal pace and to be persistent.

Tr. 484.

The ALJ gave significant weight[3] to the opinions of Dr. Toews because he was an examining physician, and because his opinion was consistent with the medical record. Tr. 31. The ALJ gave weight to his opinion that Plaintiff could perform repetitive forms of work. Tr. 31. In contrast, the ALJ gave no weight to the opinion from Carrie Bishop, M.Ed., stating: "No weight is given the opinion from Carrie Bishop, M.E.d, because, as noted by Dr. Martin, she is not a doctor and some of the results from the tests she administered were significantly different from those found by Dr. Toews." Tr. 32.

In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are

---

[3]The ALJ indicated that she gave "controlling weight" to multiple providers, but it appears from the context that the ALJ intended to give significant weight to the designated opinions. Tr. 31. In social security disability regulations, "controlling weight" is applicable only under certain circumstances. See SSR 96-2p. For example, "controlling weight" may be given to a treating source's medical opinions related to the nature and severity of an individual's impairments. SSR 96-2.

considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p. However, an ALJ is required to consider observations by non-acceptable medical sources as to how an impairment affects a claimant's ability to work. *Sprague,* 812 F.2d at 1232. An ALJ must give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala,* 12 F.3d 915 (9th Cir. 1993). To qualify as germane, a reason for disregarding the testimony of a lay witness must be more than a wholesale dismissal of all such witnesses as a group, but rather must be specific to the individual witness. *Smolen*, 80 F.3d at 1288.

In determining the weight to give an opinion from an "unacceptable" source, the ALJ considers, among other factors, the consistency of the source's opinion with other evidence in the record and the source's training and expertise. SSR 06-03p. Moreover, relevant factors in evaluating a medical opinion are the amount of evidence supporting the opinion and the quality of the explanation provided in the opinion. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007). Similarly, an ALJ need not give weight to conclusory opinions supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

In this case, the ALJ's reasoning for dismissing Ms. Bishop's opinion is not crystal clear. Plaintiff argues that the ALJ impermissibly dismissed Ms. Bishop's assessment on the basis that she is not a doctor. ECF No. 17 at 14-15. However, a reasonable interpretation of the ALJ's statement is that the opinion from Ms. Bishop, a non-accepted source, received no weight because an accepted source, Dr. Toews, offered a significantly different opinion based upon objective tests he administered.

Ms. Bishop's findings were contradicted by Dr. Toews' findings. Tr. 32. Ms. Bishop administered a single test and concluded that Plaintiff functions in the borderline range of intelligence. Tr. 271. By contrast, Dr. Toews administered

four objective tests, and concluded that while Plaintiff's cognitive abilities fell in the low average range, memory tests revealed her memory was adequate for functioning in a wide variety of jobs. Tr. 483-84. Significantly, the SIMS test administered by Dr. Toews revealed Plaintiff was "grossly exaggerating" her symptoms. Tr. 483.

Dr. Martin, the non-examining testifying expert witness, noted that the two examinations revealed similar test results in both working memory and processing speed, but revealed different abilities related to IQ, verbal comprehension and perceptual reasoning. Tr. 57-58. Dr. Martin explained that some variability between test results is not unusual, both set of test results are likely valid, and the differences in results could be explained by the fact two different examiners administered the tests several months apart. Tr. 58. Finally, Dr. Martin pointed out that only Dr. Toews administered the test that evaluates malingering, or symptom exaggeration. Tr. 57.

Because Dr. Toews is an accepted source, who administered four objective tests and, thus, provided more independent clinical findings, it was not error for the ALJ to resolve the conflict between the two examining sources by giving more weight to Dr. Toews' assessment. Under these circumstances, the ALJ did not err.

**3.    Vocational Expert Testimony**

Plaintiff argues that the ALJ erred by disregarding the testimony of the vocational expert who indicated that a hypothetical worker could not sustain work if the worker: (1) was unable to maintain concentration for a certain period of time, be punctual or sustain an ordinary routine without special supervision between 20 percent and 33 percent of the time; (2) needed to take an additional ten-minute break during each hour of the day; or (3) needed to be constantly reminded in a positive, supportive manner about how to perform job-related tasks. ECF No. 17 at 21-22. Plaintiff argues that all of the scenarios describe Plaintiff, and thus the ALJ erred by finding that she could work. ECF No. 17 at 21-22.

The hypothetical that ultimately served as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (citation and quotation marks omitted). However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence ." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson*, 539 F.3d at 1175-76.

In this case, the ALJ properly accounted for all the limitations and restrictions that she found credible and supported by the record. The limitations cited by the Plaintiff were proposed by Ms. Bishop, whose opinion was properly given little weight. As such, the ALJ's failure to include these limitations was not error. As a result, the ALJ's reliance upon the VE testimony in response to the hypothetical was not error.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17,** is **DENIED**.

The District Court Executive is directed to file this Order, provide copies to

1 | the parties, enter judgment in favor of Defendant, and **CLOSE** this file.
2 | DATED October 23, 2014.

_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED October 23, 2014.

_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16